## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Hans E. Erickson,

    Plaintiff,

v.

ChexSystems, Inc., and

JP Morgan Chase Bank, N.A.,

    Defendants.

**COMPLAINT AND
JURY TRIAL DEMAND**

Plaintiff Hans E. Erickson, for his Complaint against Defendants ChexSystems, Inc. and JP Morgan Chase Bank, N.A., states as follows:

### INTRODUCTION

1. Plaintiff is an amateur coin collector.  He is not a criminal.  He does not defraud banks or anyone else, nor does he launder money or engage in any other illegal banking transactions.  He just collects coins.

2. Defendants nevertheless falsely accused Plaintiff of "FRAUD," thus interfering with Plaintiff's existing and prospective banking relationships and causing him additional harm.

3. Plaintiff's dogged efforts to clear his name have proved futile, as Defendants have displayed the same willful indifference to

Plaintiff's plight as they have to their own obligations under federal law.

4. Accordingly, Plaintiff brings this action for damages and injunctive relief against Defendants for, among other things, violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq., as amended,* ("FCRA").

## JURISDICTION

5. This Court's jurisdiction arises under 15 U.S.C. § 1681p and 28 U.S.C. §§ 1331 and 1337.

6. Venue is proper in the District under 28 U.S.C. § 1391(b)(2) and (b)(3).

## PARTIES

7. Plaintiff is a natural person and a resident of Brooklyn, New York. He is a "consumer" as defined in FCRA, 15 U.S.C. § 1681a(c).

8. Defendant ChexSystems, Inc. is a Minnesota corporation headquartered in Woodbury, Minnesota. ChexSystems is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). ChexSystems assembles or evaluates consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

ChexSystems uses means of interstate commerce for the purpose of preparing or furnishing consumer reports.

9. Defendant JP Morgan Chase Bank, N.A., is a national bank and foreign corporation organized under the laws of the State of Delaware.

**FACTUAL ALLEGATIONS**

10. Plaintiff is a musician, songwriter, and former teacher who is pursuing an advanced degree in clinical psychology.

11. Plaintiff collects coins as a hobby. Specifically, Plaintiff collects silver dimes and silver half-dollars. U.S. coins currently circulated are composed of copper and nickel alloys, but one can find older dimes and half-dollars that are 40-90% silver. For years, Plaintiff has been buying up rolls of dimes and half-dollars in order to look through them and pick out the silver ones. Plaintiff even taught his three-year-old son to identify the silver coins, so the two of them search together.

12. In connection with his coin collecting activities, Plaintiff would routinely withdraw hundreds of dollars in coins from the bank then re-deposit them after harvesting the silver ones.

13. In late August 2013, Plaintiff received an urgent message from his branch office with Defendant JP Morgan Chase Bank,

N.A. Plaintiff contacted the Branch Manager and learned that Chase Bank's "Fraud Detection Unit" had asked her to investigate certain transactions involving routine deposits and withdrawals of similar sums.

14. Plaintiff explained to the Branch Manager that the "suspicious" transactions involved innocent coin-collecting activities and that they were in no respect fraudulent or otherwise improper. The Branch Manager confirmed that she was familiar with this practice, that she had other customers who engaged in the same activity, and that she would relay this to the Fraud Detection Unit. The Branch Manager suggested that Plaintiff "take a couple of weeks off" while things were sorted out, and that he could then resume his normal activities without worry.

15. Plaintiff was therefore taken by surprise when, in early October 2013, Chase Bank closed his account without warning. On October 16, 2013, a letter arrived from Chase Bank informing him (after the fact) that the bank "had recently noticed unusual activity on your account," and that "as a result, we're closing the account(s)." Chase Bank's letter further stated that "[b]ased on your account activity and its subsequent closure, we

may elect to report relevant information to credit reporting agencies.  This could affect your ability to open accounts in the future."

16.   Within one month, Plaintiff received a notification of account closing from Citibank N.A., another one of Plaintiff's banks. Citibank stated that the decision to close Plaintiff's account "was made as a result of a recent report from ChexSystems, Inc."

17.   Plaintiff obtained a copy of his ChexSystems report, which featured an October 2013 entry proclaiming "SUSPECTED FRAUD ACTIVITY," apparently based on information provided by Chase Bank.

18.   Plaintiff made multiple telephone calls to Chase Bank in an attempt to clear things up and to get rid of the false report of fraud. In the course of these calls with various Chase Bank employees, Plaintiff got the unconfirmed impression that the account closing was the result of the deposits and withdrawals associated with Plaintiff's coin collecting, as interpreted by the Fraud Detection Unit.  Plaintiff repeatedly explained about his hobby and the purpose of the deposits and withdrawals at issue, confirming that none of his banking activity was fraudulent or otherwise improper.

19. Chase Bank's customer service representatives told Plaintiff that there was nothing they could do, and that, in fact, they did not even have access to the information that went into the challenged decision. According to Chase Bank's representatives, decisions come down from the Fraud Detection Unit and there is simply no appealing or reversing them. The last Chase Bank representative that Plaintiff spoke to made the vague assertion that the nature of the situation required that she simply terminate the call without having any further communications with Plaintiff.

20. Despite Plaintiff's efforts, Chase Bank refused to reopen the account and the "SUSPECTED FRAUD ACTIVITY" entry remained on Plaintiff's ChexSystems report.

21. Plaintiff nevertheless continued his campaign to have this false and defamatory information correct or removed from his report.

22. On December 4, 2013, Plaintiff sent a letter via certified mail to ChexSystems Consumer Relations in Woodbury, Minnesota. Plaintiff's letter made clear that the report of "SUSPECTED FRAUD ACTIVITY" was inaccurate. Plaintiff demanded, among other things, that ChexSystems validate the information with

Chase Bank, and that ChexSystems provide Plaintiff copies of any documentation associated with the alleged fraud. Alternatively, Plaintiff demanded removal of the item from his file.

23. By form letter dated December 15, 2013, ChexSystems acknowledged receipt of Plaintiff's letter and pledged that "your file has been forwarded to the appropriate personnel for handling." ChexSystems committed to notifying Plaintiff of the results of its investigation "within approximately 30 days."

24. On or about January 15, 2014, ChexSystems sent Erickson an updated report. Plaintiff's updated ChexSystems file continued to report "SUSPECTED FRAUD ACTIVITY." The only change to Plaintiff's report was the following line inserted after the reference to "FRAUD": "REPORT IS DISPUTED BY CONSUMER(S), AND HAS BEEN VERIFIED ACCURATE BY FI". This single line represents the sum total of the information provided in response to Plaintiff's request to date.

25. Despite being required to do so by the FCRA, ChexSystems failed to notify Plaintiff in writing of his right to demand and to receive from ChexSystems "a description of the procedure used to determine the accuracy and completeness of the information."

26. Nevertheless, on January 30, 2014, Plaintiff sent another certified letter to ChexSystems. In his letter, Plaintiff pointed out that ChexSystems still had not shared any evidence from Chase Bank regarding the alleged fraud. Plaintiff demanded that ChexSystems provide a description of the procedure used to determine the accuracy and completeness of the information from Chase Bank. In addition, Plaintiff requested the name and contact information of any Chase Bank employees who provided information, and any documents provided by Chase Bank bearing Plaintiff' signature. Plaintiff again pointed out that the report of fraud constitutes "a very serious error."

27. On February 12, 2014, Plaintiff received another form letter from ChexSystems acknowledging receipt of his January 30 letter and indicating that "ChexSystems will notify you of the results of the investigation within approximately 30 days."

28. ChexSystems never provided Plaintiff the statutorily-mandated description of the procedure used to determine the accuracy and completeness of the disputed information. Indeed, Plaintiff received no further communication from ChexSystems after the February 12 form letter.

29. Meanwhile, Plaintiff expended time, effort, and resources attempting to form new banking relationships following the account closings by Chase and Citibank.  Plaintiff started by visiting local banks in his area, including Apple Bank, TD Bank, and Capitol One.  In attempting to form new banking relationships Plaintiff inquired as to whether these banks relied on ChexSystems reports in deciding whether to permit prospective customers to open an account.  Each of these banks gave Plaintiff the same answer: that they did rely on ChexSystems reports, and that Plaintiff's report showing "SUSPECTED FRAUD ACTIVITY" prevented them from considering a banking relationship with Plaintiff.

30. These rejections by traditional banks forced Plaintiff to explore relationships with various Internet banks that advertised the fact that they did not utilize ChexSystems to screen prospective customers.  Not surprisingly, the terms of such banking arrangements were far less favorable than those offered by traditional banks, including high account balance minimums and cumbersome processes and rules regarding usage.

31. In addition, the false report of fraud, the closings of Plaintiff's bank accounts, Plaintiff's rejection by other banks, and

Defendants' refusal to acknowledge, much less remedy, the problem, caused Plaintiff emotional distress, including anxiety, frustration, embarrassment, and humiliation.

32. Faced with ChexSystems' intransigence, Plaintiff redirected his efforts back to Chase Bank. By certified letter dated May 8, 2014, Plaintiff formally reiterated his dispute of Chase Bank's report of fraud. Plaintiff requested that Chase Bank either validate the report with evidence, or in the alternative, that Chase Bank request that all credit reporting agencies remove the entry. Chase Bank never responded to the letter, despite the FCRA's requirement that it do so.

33. In numerous telephone calls both before and after Plaintiff sent the May 8 letter, Chase Bank repeatedly refused to provide any information to Plaintiff. Ultimately, Chase Bank employees would only say that the matter had been placed in the hands of Chase Bank's Fraud Detection Unit, and that no one may speak to the Fraud Detection Unit.

## CAUSES OF ACTION

### COUNT I
Failure to Maintain and Disclose Reasonable Procedures
Violation of the FCRA, 15 U.S.C. §§ 1681e(b) and 1681i(a)
(Against ChexSystems)

34. Plaintiff realleges and incorporates all previous paragraphs of this Complaint.

35. ChexSystems violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of credit reports and credit files it maintained and published concerning the Plaintiff.

36. In addition, 15 U.S.C. § 1681i(a)(6)(B)(iii) requires ChexSystems to furnish to Plaintiff, after completing the required reinvestigation, a notice that, if requested by a consumer, "a description of the procedure used to determine the accuracy and completeness of the information…including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available." ChexSystems never provided this notice to Plaintiff.

37. Moreover, 15 U.S.C. § 1681i(a)(7) requires ChexSystems to provide to the consumer the description of procedures referred to in paragraph 6(B)(iii) within 15 days of a request for such a

description.  ChexSystems failed to provide the description within 15 days of Plaintiff's request, or anytime thereafter.

38. As a result of this conduct, action, and inaction of ChexSystems, Plaintiff suffered actual damages in the form of loss of credit, closure of bank accounts, and interference with existing and prospective banking relationships.  In addition, Plaintiff suffered emotional distress, including anxiety, frustration, embarrassment, and humiliation.

39. ChexSystems' conduct, actions, and inactions were willful, rendering it liable for damages under 15 U.S.C. § 1681n.  In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

40. Plaintiff is entitled to recover costs and attorney's fees from ChexSystems in an amount to be determined at trial pursuant to 15 U.S.C. § 1681n and/or 1681o.

**COUNT II**
Failure to Conduct a Reasonable Investigation
Violations of FCRA, 15 U.S.C. § 1681i
(Against ChexSystems)

41. Plaintiff realleges and incorporates all previous paragraphs of this Complaint.

42. ChexSystems violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving

actual notice of such inaccuracies; by failing to conduct a genuine and reasonable reinvestigation in response to Plaintiff's dispute; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's file; by persisting in reporting information that it knew or should have known to be inaccurate and damaging; and by relying on verification from a source it had reason to know is unreliable.

43. As a result of ChexSystems' conduct, actions, and inaction, Plaintiff suffered actual damages in the form of loss of credit, closure of bank accounts, and interference with existing and prospective banking relationships. In addition, Plaintiff suffered emotional distress, including anxiety, frustration, embarrassment, and humiliation.

44. ChexSystems' conduct, actions, and inactions were willful, rendering ChexSystems liable for damages under 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

45. Plaintiff is entitled to recover costs and attorney's fees from ChexSystems in an amount to be determined at trial under 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT III
Failure to Conduct Reasonable Reinvestigation
Violation of the FCRA, 15 U.S.C. § 1681s-2(b)
(Against Chase Bank)

46. Plaintiff realleges and incorporates all previous paragraphs of this Complaint.

47. Defendant Chase Bank violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information; by failing to review and consider all the information provided by ChexSystems and/or Plaintiff; by failing to delete inaccurate information after receiving notice of such inaccuracies; and by persisting in reporting information that Chase Bank knew or should have known to be inaccurate and damaging.

48. As a result of such conduct, action, or inaction by Chase Bank, Plaintiff suffered actual damages by loss of credit, closure of bank accounts, and interference with existing and prospective banking relationships.  In addition, Plaintiff suffered emotional distress, including anxiety, frustration, embarrassment, and humiliation.

49. Chase Bank's conduct, action, or inaction was willful, rendering it liable for damages under 15 U.S.C. § 1681n.  In the

alternative, Chase Bank was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

50. Plaintiff is entitled to recover costs and attorney's fees from Chase Bank in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT IV
Defamation
(Against Both Defendants)

51. Plaintiff realleges and incorporates all previous paragraphs of this Complaint.

52. Defendants made statements of and concerning Plaintiff, namely that Plaintiff had committed bank fraud.

53. Defendants' statements were, and are, false. Plaintiff has not committed bank fraud.

54. Defendants published the false statements to third parties.

55. Defendants made their statements with actual knowledge of their falsity, or with reckless disregard for whether the statements were true or not.

56. Plaintiff suffered actual damages, including harm to his reputation and other related harm, from the publication of the statements. In addition, the defamatory statements accused Plaintiff of criminal activity and were thus defamatory per se.

57. As a result of Defendants' defamation, Plaintiff is entitled to compensatory and presumed damages in an amount to be proven at trial.

### COUNT V
Tortious Interference with Prospective Economic Advantage
(Against Both Defendants)

58. Plaintiff had prospective contract rights with a number of banks.

59. Defendants were aware, or should have been aware, of such prospective contract rights.

60. By engaging in the tortious conduct described herein, Defendants interfered with Plaintiff's prospective contract rights. Specifically, Defendants falsely reported that Plaintiff had committed bank fraud, knowing that such a report would interfere with Plaintiff's ability to enter into banking relationships.

61. Defendants' false and defamatory report of fraud prevented Plaintiff from entering into contracts for banking services. As a result, Plaintiff suffered damage.

62. As a result of Defendants' tortious interference, Plaintiff is entitled to actual damages and punitive damages in an amount to be determined at trial.

## JURY TRIAL DEMANDED

63. Plaintiff demands a jury trial.

## REQUEST FOR RELIEF

Wherefore, Plaintiff seeks judgment against Defendants, including awards of actual damages, statutory damages, compensatory and presumed damages for defamation, leave to move to Amend the Complaint to seek punitive damages in accordance with Minnesota statutory procedure, costs and reasonable attorneys' fees, and such other and further relief as may be necessary, just, and proper.

                                                Respectfully Submitted,

                                                **Mayer Brayer, LLP**

Date: 11/13/2014                         s/James R. Mayer
                                                James R. Mayer (#312241)
                                                5844 Columbus Avenue South
                                                Minneapolis, MN 55417
                                                (612) 418-9764
                                                mayerbrayer@gmail.com